**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------- X

47 EAST 34TH STREET (NY), L.P.,                     :

           Plaintiff,                               :          20-cv-9978-LJL

v.                                                   :          **ORAL ARGUMENT REQUESTED**

BRIDGESTREET WORLDWIDE, INC.,                        :
VERSA CAPITAL MANAGEMENT, LLC,
DOMUS BWW FUNDING, LLC, SEAN                         :
WORKER, LEE CURTIS, WAYNE
WALKER, WALTER DEMBIEC, JOHN                         :
DOE, JANE DOE, DOMUS BWW FUNDING,                    :
LLC AND/OR BRIDGESTREET
WORLDWIDE, INC.,                                     :

           Defendants.                             :

-------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**
**FOR LACK OF SUBJECT MATTER JURISDICTION OR,**
**ALTERNATIVELY, FOR DISCRETIONARY ABSTENTION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND .............................................................................................. 2

    A.    Debtor Breaches the March 2012 Lease with 47 East ............................. 2

    B.    47 East Obtains Judgement Against Debtor for Breach of the Lease ........ 2

    C.    47 East Sues the Versa Parties as Guarantors of the Lease to Enforce the Judgement .............................................................................. 3

    D.    The Documentary Evidence and Admissions Establish the Versa Parties' Ownership of BWW and BridgeStreet ....................................... 3

    E.    The State Court's November Decision Finds Personal Jurisdiction Over the Versa Parties Based on Their Admissions of Ownership .......... 5

    F.    The Versa Parties Hire New Counsel In Attempt to Relitigate the Record Evidence and Amend the Binding Admissions of Ownership ................................................................................................ 6

    G.    The Versa Parties Cause BridgeStreet to Declare Chapter 7 Bankruptcy and Subsequently Remove the Guarantee Action on the Eve of Summary Judgment Submission ............................................. 7

ARGUMENT .................................................................................................. 8

    I.    THIS CASE MUST BE REMANDED BECAUSE THIS COURT DOES NOT HAVE JURISDICTION UNDER 28 U.S.C. § 1334(b) ............................. 8

    A.    This Court Lacks Jurisdiction Under 28 U.S.C. § 1334(b) ...................... 9

        (i)    The Guarantee Action Does Not "Arise In" the Bankruptcy Case .......................................................................................... 10

        (ii)    The Guarantee Action Is Not "Related To" the Bankruptcy Case .......................................................................................... 14

    II.    ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND REMANDED THE ACTION UNDER 28 U.S.C. § 1452(b) ................................................................. 17

        1.    The Guarantee Action Solely Asserts State Law Claims .......................................................................................... 18

        2.    The Related BridgeStreet Action is Also Pending in State Court ....................................................................................... 19

        3.    Plaintiff Has Demanded a Jury Trial ............................... 19

        4.    Remand Will Lessen The Burden on The Court's Docket ......................................................................................... 20

i

# TABLE OF CONTENTS
(continued)

**Page**

5.   Abstention and Remand Will Not Affect Administration of The Estate ........................................... 21

6.   There Is A High Likelihood of Forum Shopping ............. 21

7.   The Guarantee Action is Unrelated to the Bankruptcy Case And Involves Non-Debtor Parties ....... 23

8.   The Claims Against Defendants Are Non-Core .............. 23

CONCLUSION ........................................................................................................ 24

240677519 v1

# TABLE OF AUTHORITIES

**Page**

## Cases

*47 E. 34th Street (NY), L.P. v. BridgeStreet Corporate Hous., LLC*,
   Index No. 653320/2015 .........................................................................................3

*Allstate Ins. Co. v. CitiMortgage, Inc.*,
   11-cv-1927 (RJS), 2012 WL 967582 (S.D.N.Y. Mar. 13, 2012)........................................9, 21

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
   11-cv-2232 (NRB), 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011)........................................16

*Baker v. Simpson*,
   613 F.3d 346 (2d Cir. 2010)...............................................................................9, 10

*In re Bernard L. Madoff Inv. Sec. LLC*,
   740 F.3d 81 (2d Cir. 2014)...................................................................................13

*In re Blava In-Line, Inc.*,
   133 B.R. 33 (Bankr. S.D.N.Y. 1991) ......................................................................15

*Buechner v. Avery*,
   No. 05 Civ. 2074 (PKC), 2005 WL 3789110 (S.D.N.Y. Feb. 14, 2005)................................18

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995).............................................................................................9

*Cent. Nassau Diagnostic Imaging, P.C. v. GEICO*,
   28 Misc. 3d 34, 905 N.Y.S.2d 431 (App. Term 2010) .................................................4

*In re Chateaugay Corp*,
   213 B.R. 633 (S.D.N.Y. 1997).................................................................................16

*In re Comtek Electronics, Inc.*,
   23 B.R. 449 (Bankr. S.D.N.Y. 1982)....................................................................11, 19

*Consulting Actuarial Partners, L.P. v. Descap Planning, Inc. (In re Consulting
   Actuarial Partners, L.P.)*,
   72 B.R. 821 (Bankr. S.D.N.Y. 1987)........................................................................9

*Cortlandt St. Recovery Corp. v. Bonderman*,
   31 N.Y.3d 30 (2018) .......................................................................................5, 12

*Digital Satellite Lenders, LLC v. Ferchill*,
   No. 03 Civ. 8803 (RWS), 2004 WL 1794502 (S.D.N.Y. Aug. 10, 2004).............................19

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*,
  130 B.R. 405 (S.D.N.Y. 1991) ................................................................21

*In re Exide Technologies*,
  544 F.3d 215–16 (3d Cir. 2008) ............................................................23

*Forde v. Hornblower N.Y., LLC*,
  No. 16-CV-4028 (AJN), 2017 WL 1078585 (S.D.N.Y. Mar. 20, 2017) ..................8

*In re Foundation for New Era Philanthropy*,
  201 B.R. 382 (Bankr. E.D. Pa. 1996) ....................................................10

*In re Fruit of the Loom*,
  407 B.R. 593 (Bankr. D. Del. 2009) ......................................................19

*Harrison v. Soroof Int'l, Inc.*,
  320 F. Supp. 3d 602 (Bankr. D. Del. 2018) ....................................11, 12

*In re HCB (2020), LLC*,
  Case No. 20-12600 (Bankr. E.D. Va. 2020) ...........................................7

*Hernandez v. City of New York*,
  95 A.D.3d 793 (1st Dept 2012) ..............................................................4

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995) ..................................................................13

*In re Integrated Health Servs.*,
  291 B.R. 615 (Bankr. D. Del. 2003) ......................................................19

*JS Barkats PLLC v. Blue Sphere Corp.*,
  No. 16-CV-8404 (RA), 2017 WL 2930935 (S.D.N.Y. July 10, 2017) ..................8

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'Ship*,
  04 Civ. 708, 04 Civ. 709, 04 Civ. 710, 2004 WL 1048239 (S.D.N.Y. May 7,
  2004) ..........................................................................................17, 18, 21

*In re LaRoche Indus., Inc.*,
  312 B.R. 249 (Bankr. D. Del. 2004) ......................................................23

*In re Leco Enterprises, Inc.*,
  144 B.R. 244 (S.D.N.Y. 1992) ............................................................9, 10

*Luciano v. Maggio*,
  139 B.R. 572 (E.D.N.Y. 1992) ............................................................9, 10

iv

## TABLE OF AUTHORITIES
(continued)

*In re MBTE Prod. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007)..............................................................................8

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
  857 F.3d 141 (2d Cir. 2017)..............................................................................8

*Mirant Corp. v. The Southern Co.*,
  337 B.R. 107 (N.D. Tex. 2006)........................................................................23

*In re Moshannon Valley Citizens, Inc.*,
  No. 1:06-bk00095-MDF, 2009 WL 522906 (Bankr. M.D. Pa. Feb. 25, 2009) .....................23

*Musacchio v. United States*,
  136 S. Ct. 709 (2016)........................................................................................4

*MWH Int'l, Inc. v. Inversora Murten, S.A.*,
  No. 11-cv-2444, 2015 U.S. Dist. LEXIS 24129 (S.D.N.Y. Feb. 11, 2015)...............................5

*In re Nassau Dev. of Vill. W. Corp.*,
  547 B.R. 857 (Bankr. S.D. Fla. 2016) ..............................................................22

*In re P.D.S. Dev. Corp.*,
  103 B.R. 93 (Bankr. S.D.N.Y. 1989)............................................................9, 14

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  639 F.3d 572 (2d Cir. 2011)..............................................................................9

*Picard v. JP Morgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  721 F.3d 54 (2d Cir. 2013)...............................................................................13

*Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*,
  676 F.3d 45 (2d Cir. 2012)...............................................................................13

*In re Residential Capital, LLC*,
  No. 12-12020, 2015 WL 4747785 (Bankr. S.D.N.Y. Aug. 4, 2015)..................................18, 23

*Residential Funding Co., LLC v. UBS Real Estate Sec., Inc. (In re Residential Capital, LLC)*,
  515 B.R. 52 (Bankr. S.D.N.Y. 2014)...............................................................18

*Romano v. Kazacos*,
  609 F.3d 512 (2d Cir. 2010)..............................................................................8

v

## TABLE OF AUTHORITIES
(continued)

**Page**

*Samuel's Temple Church of God in Christ v. Parade Place, LLC (In re Parade Place, LLC)*,
  508 B.R. 863 (Bankr. S.D.N.Y. 2014) ...................................................................................14

*Schumacher v. White*,
  429 B.R. 400 (E.D.N.Y. 2010) .....................................................................................11, 14

*Seidenberg v. Rosen*,
  114 N.Y.S.2d 279 (NY Sup. Ct. 1952) ...................................................................................4

*Sokola v. Weinstein*,
  2020 U.S. Dist. LEXIS 116799 (S.D.N.Y. July 2, 2020) .................................................16, 17

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)...................................................................................................9

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
  884 F.2d 688 (2d Cir. 1989)...................................................................................................13

*Tower Auto. Mexico, S. De R.L. De C.V., v. Grupo Proeza, S.A. De C.V. (In re Tower Automotive, Inc.)*,
  356 B.R. 598 (Bankr. S.D.N.Y. 2006) ...................................................................................14

*Villa v. New York City Hous. Auth.*,
  107 A.D.2d 619 (1st Dept 1985)...................................................................................................4

*In re Wild Oates Utilities, Inc.*,
  18 B.R. 959 (Bankr. S.D.N.Y. 1982) ...................................................................................21

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
  933 F.2d 131 (2d Cir. 1991)...................................................................................................5

*In re Wolf*,
  No. 11-29593, 2011 WL 4915841 (Bankr. D.Co. Oct. 17, 2011) ..........................................22

*In re Wood*,
  825 F.2d 90 (5th Cir. 1987) ...................................................................................................9

*In re Worldcom Inc. Sec. Litig.*,
  293 B.R. 308 (S.D.N.Y. 2003)...................................................................................................18

**Statutes**

28 U.S.C. § 1334.................................................................................................................8, 10

## TABLE OF AUTHORITIES
(continued)

**Page**

28 U.S.C. § 1334 (6) ...................................................................................................18

28 U.S.C. § 1334(B) ..........................................................................................8, 9, 17

28 U.S.C. § 1334 (c)(1) ...............................................................................1, 17, 18

28 U.S.C. §§ 1334(c)(1) and 1452(b) ....................................................................17

28 U.S.C. § 1452(a) ...................................................................................................8

Plaintiff 47 East 34th Street (NY), L.P. ("47 East" or "Plaintiff"), by and through its undersigned counsel, respectfully moves this Court for an order remanding this action back to the Supreme Court of the State of New York – County of New York: Commercial Division or, in the alternative, abstaining from determining this action pursuant to 28 U.S.C. § 1334 (c)(1).   In support, Plaintiff submits the *Declaration of Jay R. Indyke in Support of Plaintiff's Motion to Remand* (the "Indyke Decl.") filed contemporaneously herewith.

## PRELIMINARY STATEMENT

Removal of this action is the latest in a series of brazen attempts by Defendants (defined below) to relitigate a clear evidentiary record established by the Supreme Court of the State of New York over two years of contested litigation.  This action was brought by 47 East to hold Defendants liable—as successors to the guarantor of a 2012 lease agreement—for a $10.9 million judgment already entered against BridgeStreet Corporate Housing, LLC n/k/a HCB (2020), LLC ("BridgeStreet" or "Debtor"), the debtor in a chapter 7 case that Defendants caused to be filed in the Eastern District of Virginia.  On the eve of summary judgment, the Defendants removed this action on the sole jurisdictional basis that it "arises in" or "relates to" to BridgeStreet's bankruptcy case.  However, Defendants' removal is nothing more than a litigation tactic designed to delay the state court proceedings, muddy the factual record and shop for a forum where they might achieve a more favorable outcome.   This action should be remanded because there is no basis for bankruptcy court jurisdiction.  The underlying state court action exclusively involves non-debtor parties and issues of state law.  The outcome of this third-party guarantee dispute will not affect the debtor or its estate and should be remanded to state court for final adjudication.

Moreover, evaluation of the discretionary abstention factors and balancing of the equities weighs strongly in favor of remand, particularly considering this matter has been pending in state court for over 2 years, the state court judge is intimately familiar with the underlying facts and

1

issues of New York law, and a summary judgment decision is imminent.  Accordingly, this case should be remanded because Defendants have not met their burden of demonstrating that the Court has jurisdiction or should otherwise adjudicate this matter.

## BACKGROUND

### A.      Debtor Breaches the March 2012 Lease with 47 East

In March 2012, 47 East and BridgeStreet entered into a lease agreement (the "Lease")[1] whereby 47 East agreed to lease a residential apartment building located at 47 East 34th Street, New York, New York (the "Building") to BridgeStreet.  When 47 East and BridgeStreet entered into the Lease, BridgeStreet was wholly owned by BridgeStreet Worldwide, Inc. ("BWW").  As a condition of entering into the Lease, 47 East required that all obligations of BridgeStreet under the Lease be guaranteed by BridgeStreet's parent company, BWW, and its successors and assigns (the "Guaranty").  *See* Indyke Decl., Ex. A at 63–8.  Over the course of its tenancy, BridgeStreet repeatedly violated the terms of the Lease by operating the Building as a "hotel"—a use expressly prohibited under the Lease.  The terms of the Lease and the Guaranty specify that the rights and obligations of the parties are governed by New York law, with any dispute to be adjudicated in the State of New York.  *See id.*, Lease § 32.7, Guaranty § 7.

### B.      47 East Obtains Judgement Against Debtor for Breach of the Lease

In 2015, 47 East commenced an action against BridgeStreet in the Supreme Court of the State of New York – County of New York: Commercial Division, seeking indemnification and reimbursement for damages arising from BridgeStreet's use of the premises in violation of the terms of the Lease, resulting in the Building losing its eligibility for certain valuable tax abatement

---

[1]      Specifically, as used herein, the term "Lease" refers to, collectively, (i) the original lease dated March 1, 2012 and (ii) the First Addendum to the original lease dated February 2014.  *See* Indyke Decl., Exs. A, B.

benefits (the "BridgeStreet Action").[2]  After years of litigation, 47 East was granted summary judgment as to BridgeStreet's liability and, on February 14, 2020, a judgement was entered in the amount of $10,908,400.91 against BridgeStreet for damages arising from its breach of the Lease (the "Judgment").  *See* Indyke Decl., Ex. C.

C.    **47 East Sues the Versa Parties as Guarantors of the Lease to Enforce the Judgement**

The state court litigation removed to this Court arises out of the Lease and Guaranty and seeks to enforce the Judgement against Defendants as successors to BWW.    It is a dispute among non-debtor parties, as described below.

In June 2018, 47 East commenced the instant action in Supreme Court of the State of New York – County of New York: Commercial Division (the "State Court"), Index No. 653057/2018 (the "Guarantee Action" or "Action").  In August  2018, Plaintiff filed an amended complaint asserting claims against Versa Capital Management, LLC ("Versa") and Domus BWW Funding, LLC ("Domus" and together with Versa, the "Versa Parties" or "Defendants"), to hold the Versa Parties liable for the Judgement as assignees of the Lease and/or successors to BWW, as guarantor of the Lease, under theories of successor liability, fraudulent conveyance, and alter ego (the "Amended Complaint").  *See* Indyke Decl., Ex. D.  Since filing the Amended Complaint, discovery has been conducted, yielding extensive documentary evidence and deposition testimony that substantiates the claims asserted against the Versa Parties.

D.    **The Documentary Evidence and Admissions Establish the Versa Parties' Ownership of BWW and BridgeStreet**

Specifically, the evidence shows that, during the time of BridgeStreet's tenancy in the Building, Domus, individually and in its capacity as agent for certain Domus affiliates (all wholly-

---

[2]    *47 E. 34th Street (NY), L.P. v. BridgeStreet Corporate Hous., LLC*, Index No. 653320/2015.

owned by Versa), acquired 100% of the membership interests (100% of the equity) of BridgeStreet pursuant to a Bill of Sale dated March 3, 2014.  *See* Indyke Decl., Exs. E-1, E-2.  At the same time, Domus acquired all or substantially all of the assets of BWW, including all of the equity in and the assets of its ongoing business operations pursuant to a Collateral Transfer Agreement dated March 3, 2014.  *See* Indyke Decl., Ex. F.  Domus paid no cash for the assets it acquired.  Upon consummation of those transactions, BWW was dissolved on March 4, 2014.

A critical component of the evidence establishing Domus' ownership of BridgeStreet and BWW is the Versa Parties' response to Plaintiff's First Notice to Admit (the "Admissions") under CPLR 3123.[3]  *See* Indyke Decl., Exs. G-1, G-2, G-3.  The Admissions plainly state that Domus acquired the BridgeStreet equity on March 3, 2014, and that Domus has continued to own that equity thereafter.  *See* Admissions Nos. 2, 3, 13.  Plaintiff relied on those Admissions in litigating this Action, including its July 2019 opposition to the Versa Parties' motion to dismiss and cross motion for partial summary judgment.  *See* Indyke Decl., Ex. K.  As explained below, Defendants now seek to relitigate these facts that have been conclusively resolved to establish their ownership of BridgeStreet and BWW.[4]

---

[3]       The Versa Parties' Admissions were verified by Thomas Kennedy, the General Counsel of Versa, based on his "personal knowledge of the facts set forth therein."  A formal admission of fact under CPLR 3123 carries binding effect, and it has been held "analogous to a pleading."  *Seidenberg v. Rosen*, 114 N.Y.S.2d 279, 279 (NY Sup. Ct. 1952).  A request to admit ownership is proper under CPLR 3123 and an admission of ownership is binding on defendant.  *See Hernandez v. City of New York*, 95 A.D.3d 793, 794 (1st Dept 2012); *Villa v. New York City Hous. Auth.*, 107 A.D.2d 619, 619–20 (1st Dept 1985).  *Cent. Nassau Diagnostic Imaging, P.C. v. GEICO*, 28 Misc. 3d 34, 35–36, 905 N.Y.S.2d 431, 432 (App. Term 2010) (An "admission made pursuant to a notice to admit is not merely evidence of the fact admitted, but rather conclusively resolves that fact.")

[4]       In the Notice of Removal, the Versa Parties fail to alert this Court that the factual assertions made therein are *directly* at odds with the prior findings of the State Court.  At a minimum, the doctrine of law of the case requires that the Versa Parties alert this Court to its efforts to collaterally attack the State Court's prior findings.  *See Musacchio v. United States*, 136 S. Ct. 709, 716 (2016).

240677519 v1

**E.     The State Court's November Decision Finds Personal Jurisdiction Over the Versa Parties Based on Their Admissions of Ownership**

On November 6, 2019, the State Court entered a decision and order (the "November Decision," Indyke Decl., Ex. H) expressly finding that Versa and Domus were subject to personal jurisdiction in the Guarantee Action because the claims asserted in the Amended Complaint "arise directly from the Versa Parties' acquisition of BridgeStreet and its operating subsidiaries . . . ." *Id.* at 9.  "When the Versa Parties assumed the Lease by ***purchasing 100% of BridgeStreet's equity***, they acquired the Building in New York and continued to use and occupy it.  There is a substantial relationship between the transactions at issue and the claims asserted." *Id.* (emphasis added).

Having found personal jurisdiction over the Versa Parties, the State Court denied the Versa Parties' motion to dismiss Plaintiff's claims against the Versa Parties for (i) successor liability under the Guaranty for the entire amount of the Judgment, (ii) fraudulent conveyance under Debtor Creditor Law § 273, and (iii) veil piercing.[5]  As discussed therein, those claims are based, in part, on the transactions or series of transactions by which the Versa Parties  acquired BridgeStreet.  The November Decision also denied without prejudice Plaintiff's cross-motion for partial summary judgment, subject to renewal at a later date.  The State Court found that Plaintiff had made a *prima facie* showing of the key elements of successor liability theory under the New York "mere continuation" doctrine, and identified only minor disputed factual issues that precluded summary judgement at that time. *See id.* at 16–18.

---

[5]     For the avoidance of doubt, the Amended Complaint seeks to pierce the corporate veil of BWW.  *See* Amended Complaint at 23.  Under New York law, the concepts of alter ego liability and veil piercing liability "are indistinguishable, do not lead to different results, and should be treated as interchangeable."  *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991); *see also MWH Int'l, Inc. v. Inversora Murten, S.A.*, No. 11-cv-2444, 2015 U.S. Dist. LEXIS 24129 at *35–36 (S.D.N.Y. Feb. 11, 2015). *See also Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 50 (2018) (New York Court of Appeals making clear that piercing the corporate veil is remedy available under New York law to enforce a contractual guaranty against the alter ego of the guarantor.).

### F.     The Versa Parties Hire New Counsel In Attempt to Relitigate the Record Evidence and Amend the Binding Admissions of Ownership

Now that the Judgement has been entered against BridgeStreet for which the Versa Parties may be liable as assignees of the Lease and successors to BWW as guarantor of the Lease, the Versa Parties have brazenly embarked on a wholesale effort to relitigate the State Court's finding in the November Decision as to the Versa Parties' ownership of BridgeStreet.  This effort commenced in February 2020 when the Versa Parties retained new counsel in both the BridgeStreet Action and the Guarantee Action.  Namely, the attorneys at Richards Kibbe & Orbe LLP ("RKO")—who are now before this Court.  In February and March 2020, multiple hearings were held before Justice Borrok—the State Court Justice who has been presiding over *both* the BridgeStreet Action and Guarantee Action—where RKO unsuccessfully attempted to relitigate Justice Borrok's prior finding as to the Versa Parties' ownership of BridgeStreet.

In September 2020, the Versa Parties moved to amend their prior Admissions as to ownership of 100% of the BridgeStreet equity.  *See* Indyke Decl., Ex. I.  That motion was returnable on December 14, 2020, with opposition papers due on December 7, 2020.[6]  At the same time, BridgeStreet's counsel sought leave to withdraw from the BridgeStreet Action without replacement counsel.  On November 2, 2020, the State Court entered a decision and order in the BridgeStreet Action (i) denying the motion of counsel to withdraw from that case, (ii) finding that the consent to withdraw filed by the Versa Parties (NYSCEF Doc. No. 306)[7] was "a judicial admission, and de facto and mere continuation evidence," and (iii) granting leave to Plaintiff to

---

[6]     On December 18, 2020, the State Court entered a decision and order denying the Versa Parties' motion to amend the Admissions.  *See* Indyke Decl., Ex. O.

[7]     The Consent to Withdrawal was signed by Thomas A. Kennedy as (i) Secretary, on behalf of Versa Capital Management LLC, and (ii) Secretary, on behalf of Domus BWW Funding, LLC, and (iii) Secretary, on behalf of BridgeStreet Corporate Housing, LLC and provided evidence as to the continuity of management in connection with Plaintiff's claims under theories of successor liability.

file a renewed motion for summary judgment in the Guarantee Action.  *See* Indyke Decl., Ex. J.

On November 3, 2020, RKO sent a letter to Justice Borrok disputing the merits of the November

2, 2020 decision and order—another improper attempt to relitigate decisions of the State Court.

*See* Indyke Decl. Ex. L.

> ### G.     The Versa Parties Cause BridgeStreet to Declare Chapter 7 Bankruptcy and Subsequently Remove the Guarantee Action on the Eve of Summary Judgment Submission

Pursuant to the State Court's November 2, 2020 decision and order, Plaintiff was finalizing

its renewed motion for summary judgment against the Versa Parties on December 7, 2020, along

with its opposition to the Versa Parties' motion to amend the Admissions.  On November 25, 2020,

the Versa Parties caused BridgeStreet to file a chapter 7 bankruptcy petition in the Eastern District

of Virginia (the "Bankruptcy Case").  *In re HCB (2020), LLC*, Case No. 20-12600 (Bankr. E.D.

Va. 2020).[8]  Simultaneously with commencement of the Bankruptcy Case, the Versa Parties filed

the Notice of Removal presently before this Court (the "Notice of Removal").  *See* Dkt. No. 2.

The timing is not coincidental.  Rather than litigate the Guarantee Action to its conclusion in State

Court before a judge with intimate knowledge of the parties, issues, facts, complexities of this

case, the judicial admissions, and the State Court's previous findings of fact and conclusions of

law, the Versa Parties brought the process to a halt in a flagrant effort to shop for another forum

to relitigate issues that have already been decided against them.[9]

---

[8]     The "Notice of Chapter 7 Bankruptcy" that was served on all of BridgeStreet's creditors—including 47 East and the Versa Parties–specifically states that "[n]o property appears to be available to pay creditors."  *See* Indyke Decl., Ex. N at 2.

[9]     It appears that the Versa Parties removed this Action with the intention of having the matter transferred to, and heard by, the U.S. Bankruptcy Court for the Eastern District of Virginia where the bankruptcy of BridgeStreet was recently filed, but as of yet no motion to transfer venue has been made.

## ARGUMENT

**I.      THIS CASE MUST BE REMANDED BECAUSE THIS COURT DOES NOT HAVE JURISDICTION UNDER 28 U.S.C. § 1334(B)**

This Action should be remanded because the Court does not have original jurisdiction over the causes of action asserted in the Amended Complaint.  Defendants removed this Action based solely upon 28 U.S.C. § 1452(a), which states that a "party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." As the party seeking removal, Defendants bear the burden of demonstrating that the district court has original jurisdiction over the matter.  *JS Barkats PLLC v. Blue Sphere Corp.*, No. 16-CV-8404 (RA), 2017 WL 2930935, at *3 (S.D.N.Y. July 10, 2017) (citing *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017)).

When analyzing a motion to remand, "statutory procedures for removal are to be strictly construed, and . . . out of respect for the limited jurisdiction of the federal courts and the rights of states, [federal courts] must resolve any doubts against removability."  *JS Barkats PLLC*, 2017 WL 2930935, at *3 (quoting *In re MBTE Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (alterations, internal citations, and quotation marks omitted) and citing *Forde v. Hornblower N.Y., LLC*, No. 16-CV-4028 (AJN), 2017 WL 1078585, at *2 (S.D.N.Y. Mar. 20, 2017) ("In light of federalism concerns, federal courts construe the removal statute narrowly and resolve any doubts against removability.")).   "Where, as here, 'subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings,' including 'documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.'"  *JS Barkats PLLC*, 2017 WL 2930935, at *3 (quoting *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010)).

240677519 v1

A.      **This Court Lacks Jurisdiction Under 28 U.S.C. § 1334(b)**

Defendant's Notice of Removal relies solely upon 28 U.S.C. § 1334(b) as the basis for this Court's original jurisdiction over the Action.  Section 1334(b) confers upon the district court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  "'Arising in' and 'arising under' proceedings encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and 'depend upon the application or construction of bankruptcy law as expressed in Title 11.'"  *In re Leco Enterprises, Inc.*, 144 B.R. 244, 248 (S.D.N.Y. 1992) (quoting *Consulting Actuarial Partners, L.P. v. Descap Planning, Inc. (In re Consulting Actuarial Partners, L.P.)*, 72 B.R. 821, 828 (Bankr. S.D.N.Y. 1987)).  To "arise under" Title 11, a civil proceeding "must either be created by title 11 or involve administration of the estate."  *Luciano v. Maggio*, 139 B.R. 572, 575 (E.D.N.Y. 1992).  "Arising in" jurisdiction encompasses "claims that 'are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy.'"  *Baker v. Simpson*, 613 F.3d 346, 350–51 (2d Cir. 2010) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

"In [the Second] Circuit, 'a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate.'"  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks omitted)).  The scope of the bankruptcy court's "related to" jurisdiction is not limitless.  *SPV Osus Ltd.*, 882 F.3d at 340 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)).  "Conceivable effects typically manifest themselves by altering the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors."  *Allstate Ins. Co. v. CitiMortgage, Inc.*, 11-cv-1927 (RJS), 2012 WL 967582, at *4 (S.D.N.Y. Mar. 13, 2012); *see also In re P.D.S. Dev.*

9

*Corp.*, 103 B.R. 93, 95 (Bankr. S.D.N.Y. 1989) (An action between non-debtor parties is only "related to" a bankruptcy case if resolution "would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case.").  If a cause of action is outside of the scope of the bankruptcy court's "related to" authority, the bankruptcy court does not have jurisdiction to hear the matter.  *See In re Foundation for New Era Philanthropy*, 201 B.R. 382, 386 (Bankr. E.D. Pa. 1996).

This Court does not have original jurisdiction over the Action pursuant to 28 U.S.C. § 1334 because the issues raised in the Amended Complaint do not "arise under" the Bankruptcy Code, "arise in" the Bankruptcy Case, and are not "related to" the Bankruptcy Case.  The Judgement has already been entered against the Debtor and this Action is a guarantee dispute between non-debtors that will have no bearing on the outcome of the Bankruptcy Case—particularly where there is no property available to pay the creditors of BridgeStreet.

### (i)      The Guarantee Action Does Not "Arise In" the Bankruptcy Case[10]

The Guarantee Action does not "arise in" the Bankruptcy Case because (i) it does not involve a matter "depend[ent] upon the application or construction of bankruptcy law as expressed in Title 11," *In re Leco Enterprises, Inc.*, 144 B.R. at 248, and (ii) the state law claims could, and do, easily "exist[] outside of the bankruptcy.'"  *Baker*, 613 F.3d at 350–51.  The state law claims asserted in the Amended Complaint have proceeded for years in the State Court and do not require application or construction of bankruptcy law.  These claims neither involve nor impact the Debtor,

---

[10]      The Action plainly does not "arise under the Bankruptcy Code because the state law causes of action asserted in the Amended Complaint were neither "created by title 11 [n]or involve administration of the estate".  *See Luciano*, 139 B.R. at 575.  Indeed, Defendants do not even attempt to argue that this Court has "arising under" jurisdiction over the Action.

any of its property or rights, or the distribution of any estate assets to creditors.

Guarantee actions such as the present matter arise outside of bankruptcy and are routinely remanded to state court. *See, e.g.*, *In re Comtek Electronics, Inc.*, 23 B.R. 449, 451 (Bankr. S.D.N.Y. 1982) (remanding guarantee action against non-debtor and stating that "[i]f a creditor can recover on its debts from some other source than the debtor's assets, the Bankruptcy Court usually will not prevent such efforts."); *Schumacher v. White*, 429 B.R. 400, 405–06 (E.D.N.Y. 2010) (remanding guarantee action between non-debtor parties where the suit did not involve the debtor or its property).

Defendants' only argument on this point is that the Action is removable because the Court has "arising in" jurisdiction over a single cause of action asserted in the Amended Complaint—Plaintiff's state law alter ego claim. Notice of Removal ¶¶ 15–18. The only legal argument that Defendants make to support this contention is an analogy of Plaintiff's claim to the alter ego claim asserted in *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 614–617 (Bankr. D. Del. 2018) that was held to be property of a bankruptcy estate. *See* Notice of Removal ¶ 17. The *Harrison* decision is non-binding and distinguishable.

In *Harrison*, the plaintiff sued Soroof International, Inc. ("Soroof") seeking to hold Soroof liable for the obligations of Quivus Systems, LLC ("Quivus") based on allegations that Soroof was the alter ego of Quivus. *Soroof*, 320 F. Supp 3d at 608. Quivus filed for bankruptcy protection and Soroof argued that plaintiff's alter ego claim was property of the bankruptcy estate. In examining plaintiff's theory of liability as against Soroof, the court found the alter ego claim to be general in nature such that other creditors of the Quivus bankruptcy estate could bring a similar alter ego claim against Quivis. *Id.* at 626–27. On these facts, the court held that plaintiff's alter ego claim against Soroof was property of the Quivus bankruptcy estate.

11

Here, Plaintiff's alter ego claim is clearly distinguishable from *Harrison* because it does not seek to hold a third-party (here, the Versa Parties) liable for the obligations of the debtor (here, BridgeStreet).  The Amended Complaint plainly argues that "the corporate veil of *BWW* should be pierced and Versa and Domus held liable for all amounts owed to 47 EAST by *BWW* under the *Guaranty* . . . including all damages awarded in the [BridgeStreet] Action . . . ."  Amended Complaint ¶ 104 (emphasis added).  As the State Court correctly summarized in the November Decision denying, inter alia, the Versa Parties' motion to dismiss Plaintiff's alter ego claim:

> In the Amended Complaint, 47 East alleges that the Versa Parties dominated and controlled *Worldwide* and continued to operate *Worldwide's* business as BridgeStreet Global Hospitality as the alter ego of the Versa Parties (Amended Complaint, ¶ 101). 47 East further alleges that the *Versa Parties abused the corporate form of Worldwide* for their own benefit, defrauding its creditors, including 47 East, through its conduct, and causing economic injury to 47 East by rendering Worldwide unable to satisfy its obligations under the Guaranty (*id.*, ¶¶ 102–03). *47 East therefore argues that the corporate veil of Worldwide should be pierced* and the Versa Parties should be held liable for all amounts owed to 47 East under the Guaranty, including all damages awarded in the BridgeStreet Action (*id.*, ¶ 104).

November Decision at 24 (emphasis added).

Contrary to Defendants' blanket assertions and conclusory statements, Plaintiff's alter ego claim is completely distinguishable from the claim in *Harrison* because it does not require allegations that the Debtor is an alter ego of the Versa Parties. Plaintiff seeks to enforce the Guaranty against the Versa Parties (both non-debtors) as the alter ego of the guarantor BWW (a non-debtor) under principles of New York law.  *See Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 50 (2018) (The New York Court of Appeals making clear that piercing the corporate veil is a remedy available to creditors under New York law to enforce a contractual guaranty against the alter ego of the guarantor.).

Defendants' argument that it is the "liquidating [sic] trustee's right and responsibility, as successor of BridgeStreet" to pursue Plaintiff's alter ego claim also fails to establish a jurisdictional basis for removal of the Action.[11]   In the Second Circuit, bankruptcy jurisdiction over a non-debtor's claim depends on "whether its outcome may have any 'conceivable effect' on the bankruptcy estate." *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014) (quoting *Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 57 (2d Cir. 2012)).   A trustee can only pursue non-debtor claims that it has authority to pursue under the Bankruptcy Code or because of rights inherited from the debtor itself. *See Picard v. JP Morgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 70–71 (2d Cir. 2013). Non-debtor claims that are based on rights "derivative" of, or "derived" from, the debtor's rights typically involve property of the estate. *See In re Quigley*, 676 F.3d at 57.   In contrast, "when creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995).

Plaintiff's alter ego claim against the Versa Parties is not a derivative claim of the Debtor that involves property of the bankruptcy estate.   Plaintiff seeks to enforce the Judgement against the Versa Parties under state law theories based upon the Versa Parties' independent legal duty as guarantors of the Lease arising from their ownership of BWW.   Plaintiff is not seeking recovery derivative of injuries suffered by debtor BridgeStreet—but for particularized injuries it suffered that can be traced to the Versa Parties' conduct. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir. 1989) (explaining that while a derivative injury is based upon "a

---

[11]   The chapter 7 trustee of BridgeStreet's bankruptcy estate has neither intervened in this Action nor contacted Plaintiff regarding the nature of Plaintiff's claims against the Versa Parties.

secondary effect from harm done to [the debtor]," an injury is said to be "particularized" when it can be "directly traced to [the third party's] conduct."). These are rights that cannot be inherited by the chapter 7 trustee of BridgeStreet's bankruptcy estate under binding Second Circuit precedent. Accordingly, Plaintiff's alter ego claim is not a derivative claim that that a bankruptcy trustee could bring on behalf of the Debtor's creditors and does not "arise in" the Bankruptcy Case.

### (ii)    The Guarantee Action Is Not "Related To" the Bankruptcy Case

The Court also lacks "related to" jurisdiction over the Guarantee Action. This is simply a state law guarantee action by non-debtors against non-debtors that can have no conceivable effect on the Debtor. *See In re P.D.S. Dev. Corp.*, 103 B.R. 93, 95 (Bankr. S.D.N.Y. 1989) ("An action between non-debtor parties is only "related to" a bankruptcy case if resolution "would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case.").

The Guarantee Action is a state law dispute exclusively between non-debtor parties. State law disputes between non-debtors do not fall within a bankruptcy court's "related to" jurisdiction when there is no conceivable effect on the bankruptcy estate. *See Samuel's Temple Church of God in Christ v. Parade Place, LLC (In re Parade Place, LLC)*, 508 B.R. 863, 865–66 (Bankr. S.D.N.Y. 2014) ("This Court, however, will not exercise jurisdiction over claims solely between two nondebtors, with no conceivable effect on the bankruptcy estates in these proceedings."); *Tower Auto. Mexico, S. De R.L. De C.V., v. Grupo Proeza, S.A. De C.V. (In re Tower Automotive, Inc.)*, 356 B.R. 598, 600–01 (Bankr. S.D.N.Y. 2006) (litigation between debtor's wholly owned nondebtor subsidiary and third party had no conceivable effect on bankruptcy estate, even where there was a risk of diminution of value of subsidiary); *Schumacher v. White*, 429 B.R. 400, 405–06 (E.D.N.Y. 2010) (remanding guarantee action between non-debtor parties where the suit did

14

not involve the debtor or its property); *See In re Blava In-Line, Inc.*, 133 B.R. 33, 37–38 (Bankr. S.D.N.Y. 1991) (litigation between non-debtor parties not "related to" bankruptcy cases where litigation "would not produce any benefits for other creditors of the debtor's estate nor would such action affect the other creditors' distribution prospects.").

The fact that the Versa Parties are also alleged to be liable for the Judgement does not bring the Action within the court's subject matter jurisdiction.  The outcome of the Action will not alter the *res* of BridgeStreet's estate because 47 East already holds a $10.9 million Judgment claim against the estate.  Every dollar that Versa Parties pay against the Judgement increases any indemnification claim against they may have against the estate—and consequently decreases Plaintiff's Judgement claim against the estate in that same amount.  Accordingly, the outcome of the Action is net neutral on the bankruptcy estate and would neither produce any benefits for other creditors of the estate nor affect their distribution prospects.

Moreover, the Versa Parties have repeatedly asserted to  the State Court and 47 East that they are senior secured creditors of BridgeStreet, holding pre-existing claims that far exceed the company's assets.  According to the Versa Parties, their pre-existing secured debt makes any distribution to BridgeStreet's unsecured creditors illusory from the outset.  According to the Notice to Creditors from the bankruptcy court "no property appears to be available to pay creditors." *See* Indyke Decl., Ex. N at 2.  Inasmuch as payment of the Versa Parties' claims leave unsecured creditors with nothing in any event, the instant action has no conceivable adverse impact on the estate.

Defendants also contend that "related to" jurisdiction is supported by the existence of contingent indemnification claims against the Debtor's estate arising from certain credit

agreements between Domus and BridgeStreet.[12]   However, Defendants fail to articulate a reasonable basis for the alleged indemnification claim. *See Sokola v. Weinstein*, 2020 U.S. Dist. LEXIS 116799, at *24 (S.D.N.Y. July 2, 2020) (the removing party must articulate a legal basis for the indemnification claim and it must be reasonable).   Although contingent outcomes can satisfy the conceivable effects test, "the potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings." *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 11-cv-2232 (NRB), 2011 WL 4965150, at *4 (S.D.N.Y. Oct. 19, 2011); *In re Chateaugay Corp*, 213 B.R. 633, 640 (S.D.N.Y. 1997) ("[T]he mere assertion of an indemnity claim against a debtor, no matter how baseless, cannot trigger bankruptcy jurisdiction.").

Defendants' alleged indemnification claims against the Debtor "from and against any and all Claims, relating to or arising out of any Loan Document or any agreement, arrangement, instrument, matter or transaction contemplated thereby or any act or omission relating thereto." Notice of Removal ¶ 20 (citing 2014 Credit Agreement § 12.4)).   In other words, Defendants seek relief from this Court solely in the capacity as secured lenders of BridgeStreet.   *Id.* (stating that "[d]uring the period of March 2014 and following, Domus Funding's legal rights over BridgeStreet Corporate Housing are defined by and subject to the 2014 Credit Agreement.").   However, the Guarantee Action seeks to hold Defendants liable for the Judgement in their capacity as owners of BWW and guarantors of the Lease, not as secured lenders.[13]   Plaintiff's claims against the Versa

---

[12]      Versa is not a party to any of the credit agreements annexed to the Notice of Removal.

[13]      Plaintiff was unaware of the Versa Parties' 2014 Credit Agreement until well *after* Plaintiff commenced the Guarantee Action asserting Plaintiff's claims under the 2012 Lease and Guaranty.  The 2014 Credit Agreement was presented by the Versa Parties to the State Court for the first time in March 2020.  The 2014 Credit Agreement is an inter-company loan agreement among the Versa Parties and certain of their affiliates to which Plaintiff is not a party. The 2012 Guaranty is an "irrevocable, unconditional and absolute" guaranty of payment by the Guarantor and its successors.  *See* November Decision at 11.  As the State Court found, to the extent that the Versa Parties are successors

Parties do not "relate to or arise out of any Loan Document," but rather arise out of the Lease and Guaranty. Thus, Defendants have not set forth a reasonable basis for any alleged indemnification claim and this matter should be remanded to the State Court. *See Sokola v. Weinstein*, 2020 U.S. Dist. LEXIS 116799, at *24 (S.D.N.Y. July 2, 2020) (denying "related to" jurisdiction where there was no reasonable basis for defendant's indemnification claim where the alleged liability did not arise out of the subject indemnification agreement).

## II.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND REMANDED THE ACTION UNDER 28 U.S.C. § 1452(B)

Although Plaintiff avers that this Action is within the scope of the bankruptcy court's limited jurisdiction under 28 U.S.C. § 1334(b), should the Court determine otherwise, it should nonetheless abstain from adjudicating this dispute pursuant to the permissive abstention and equitable remand provisions under 28 U.S.C. §§ 1334(c)(1) and 1452(b). The abstention factors and equitable considerations weigh overwhelming in favor of abstention and equitable remand.

Under section 1334(c)(1), permissive abstention vests the Court with the discretion to abstain from hearing a case: "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 . . . ." 28 U.S.C. § 1334(c)(1). Similarly, under section 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." *Id.* § 1452(b). The considerations governing abstention under section 1334(c)(1) and equitable remand under section 1452(b) are "essentially identical." *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'Ship*, 04 Civ. 708, 04

---

to the Guarantor, they are bound by that Guaranty. *Id.*, at 9–11. The instant Action asserts claims against the Versa Parties arising under that Guaranty.

Civ. 709, 04 Civ. 710, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004) (citing *In re Worldcom*

*Inc. Sec. Litig.*, 293 B.R. 308, 334 (S.D.N.Y. 2003)).

Courts in this district commonly consider twelve factors in addressing a motion based on

Section 1334(c)(1):

> (1) the effect or lack thereof on the efficient administration of the estate if a
> Court recommends abstention, (2) the extent to which state law issues
> predominate over bankruptcy issues, (3) the difficulty or unsettled nature of
> the applicable state law, (4) the presence or a related proceeding
> commenced in state court or other nonbankruptcy court, (5) the
> jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of
> relatedness or remoteness of the proceeding to the main bankruptcy case,
> (7) the substance rather than form of an asserted "core" proceeding, (8) the
> feasibility of severing state law claims from core bankruptcy matters to
> allow judgments to be entered in state court with enforcement left to the
> bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood
> that the commencement of the proceeding in a bankruptcy court involves
> forum shopping by one of the parties, (11) the existence of a right to a jury
> trial, and (12) the presence in the proceeding of nondebtor parties.

*Residential Funding Co., LLC v. UBS Real Estate Sec., Inc. (In re Residential Capital, LLC)*, 515

B.R. 52, 66–7 (Bankr. S.D.N.Y. 2014) (quoting *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. at 332).

However, not all of these factors need be applied.  *In re Residential Capital, LLC*, No. 12-12020,

2015 WL 4747785, at *14 (Bankr. S.D.N.Y. Aug. 4, 2015).

Here, the balance of factors weighs heavily in favor of abstention and remand.

### 1.     The Guarantee Action Solely Asserts State Law Claims

It is uncontroverted that Amended Complaint raises no federal questions and is based solely

on questions of New York law.  S*ee Buechner v. Avery*, No. 05 Civ. 2074 (PKC), 2005 WL

3789110, at *5 (S.D.N.Y. Feb. 14, 2005) ("Only state law claims are asserted, all purportedly

arising under New York law.  This factor weighs in favor of remand."); *Kerusa*, 2004 WL

1048239, at *2 (remanding "perfectly ordinary state-law actions that invoke no aspect of

bankruptcy law, that proceed against numerous defendants who are not in bankruptcy and who are

jointly and severally liable for all claims and that, even as to the bankrupt defendant, concern actions taken long before the bankruptcy filing"); *Digital Satellite Lenders, LLC v. Ferchill*, No. 03 Civ. 8803 (RWS), 2004 WL 1794502, at *6 (S.D.N.Y. Aug. 10, 2004) (ordering equitable remand where the "action turns entirely on questions of New York law"); *In re Comtek Electronics, Inc.*, 23 B.R. 449, 451 (Bankr. S.D.N.Y. 1982) (granting motion to remand and stating that "[d]etermination of the liability of a guarantor is a state law action and a state court is better able to respond to a suit involving state law.") (citations and quotations omitted).  This factor weighs in favor of abstention and remand.

### 2.    The Related BridgeStreet Action is Also Pending in State Court

The related BridgeStreet Action is also pending in the State Court before Justice Borrok, who has presided over the BridgeStreet Action for years.[14]  Notably, the Versa Parties do not seek to remove the related BridgeStreet Action to federal court.  The Guarantee Action and the BridgeStreet Action have overlapping facts, parties, and counsel and Justice Borrok is intimately familiar with the complexities of both Actions.  This factor weighs in favor of abstention and remand.

### 3.    Plaintiff Has Demanded a Jury Trial

The Amended Complaint makes an express jury trial demand and Plaintiff has not consented to entry of final orders or judgments by the bankruptcy court.  *In re Integrated Health Servs.*, 291 B.R. 615, 623 (Bankr. D. Del. 2003) (holding that this factor "favors abstention because the only way to guarantee the right to a jury trial would be for the reference to be withdrawn, which is beyond our control, or to abstain"); *In re Fruit of the Loom*, 407 B.R. 593, 601 (Bankr. D. Del.

---

[14]    The BridgeStreet Action was commenced in 2015 in the State Court where a substantial record was developed.  Justice Borrok has presided over that action since 2018 and rendered multiple decisions and orders based on that record.

2009) (favoring abstention because bankruptcy court could not hold a jury trial).  This factor weighs in favor of abstention and remand given that a trial, if warranted, in this matter would be required to be held in a district court instead of a bankruptcy court if this matter is not remanded to state court.

### 4. Remand Will Lessen The Burden on The Court's Docket

Remand of the Guarantee Action will lessen the burden on the bankruptcy court's docket. This case involves years of litigation, fact discovery, motions to dismiss, and a motion for partial summary judgement.  The docket report of the Guarantee Action contains nearly 350 entries.  *See* Indyke Decl., Ex. M.  The State Court has held multiple hearings, reviewed hundreds of exhibits and issued numerous orders and decisions in the Guarantee Action, including on:

- Defendants' Motion to Dismiss and Plaintiff's Cross-Motion for Partial Summary Judgment (*i.e.*, the November Decision);[15]
- Plaintiff's Motion to Compel Production Pursuant to CPLR 3124;
- Defendants' Motion to Supplement the Record in Opposition to Plaintiff's Motion to Compel Production of Documents;
- Plaintiff's Motion for an Order of Attachment;
- Plaintiff's Motion to Compel Compliance with Outstanding Discovery Requests and Imposing Sanctions for Willful Discovery Abuse; and
- Defendants' Motion to Amend the Versa Parties' Admissions.

If the Guarantee Action is not remanded, the bankruptcy court will need to address several key motions that are already the subject of prior rulings made by the State Court, including, (i) Defendants' Renewed Motion for Leave to Amend Responses to Requests for Admissions, and (ii) Plaintiff's Renewed Motion for Summary Judgement on Successor Liability under the New York Mere Continuation Doctrine.  Moreover, the Versa Parties removed this Action with the intention of relitigating the evidentiary record and launching collateral attacks on Justice Borrok's

---

[15]    The State Court docket also shows that the Versa Parties filed a Notice of Appeal from the November Decision to Appellate Division of the New York Supreme Court, First Department on June 3, 2020.  Rather than litigate that appeal, the Versa Parties filed this Notice of Removal in a flagrant effort to collaterally attack the same Decision.  *See* Indyke Decl., Ex. P.

key findings.  The motion practice involved with such tactics will necessarily be a burden on the bankruptcy court's docket.  This factor weighs in favor of abstention and remand.

### 5. Abstention and Remand Will Not Affect Administration of The Estate

Abstention and remand of the Guarantee Action will have no effect on the efficient administration of the bankruptcy estate.  In fact, retention of federal jurisdiction could detract from the efficient administration of the estate and impose an unnecessary burden on the bankruptcy court by requiring it to expend time and resources on a complex state law action that could otherwise be spent administering to the estate.  *See Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991); *In re Wild Oates Utilities, Inc.*, 18 B.R. 959, 964 (Bankr. S.D.N.Y. 1982).

As detailed above, the outcome of this Action is net neutral on the bankruptcy estate and would neither produce any benefits for other creditors of the estate nor affect their distribution prospects.  *See Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 Civ. 1914 (RJS), 2012 WL 967582, at *6 (S.D.N.Y. Mar. 13, 2012) (ordering remand where "Defendants have not articulated any way in which this action will impact the efficient administration of the [] bankruptcy"); *Kerusa*, 2004 WL 1048239, at *4 (ordering remand in part because "the claims of these plaintiffs will have to be resolved and either denied or reduced to a [specified] amount before there can be any effect on the bankruptcy estate").  Moreover, there is not any property to distribute to the creditors of BridgeStreet so resolution of this Action will have no conceivable impact on the estate.  This factor weighs in favor of abstention and remand.

### 6. There Is A High Likelihood of Forum Shopping

Defendants' removal of the Guarantee Action also constitutes an attempt to forum shop for a more favorable result.  At the direction of the State Court, Plaintiff was finalizing a renewed motion for summary judgment against the Versa Parties on December 7, 2020, along with its

21

opposition to the Versa Parties' motion to amend the Admissions.  On November 25, 2020, the Versa Parties caused BridgeStreet to file chapter 7 bankruptcy in the Eastern District of Virginia and simultaneously filed the Notice of Removal presently before this Court.  The timing is not coincidental.  Rather than litigate the Guarantee Action to its conclusion in State Court before a judge with intimate knowledge of the parties, issues, facts, complexities of this case, the judicial admissions, and his previous findings of fact and conclusions of law, the Versa Parties brought the process to a halt in a flagrant effort to forum shop for a more favorable outcome.  The Versa Parties likely seek to have venue of the Guarantee Action transferred to the Bankruptcy Court for the Eastern District of Virginia.

If the Court were to find jurisdiction over the Action, it would face Defendants' renewed request for leave to amend the Admissions and Plaintiff's renewed summary judgement motion. Fact discovery has been conducted for years, and the majority of issues have been adjudicated by the State Court and should not be disturbed absent exceptional circumstances not present here, such as a change in law.  *See In re Wolf*, No. 11-29593, 2011 WL 4915841, at *3 (Bankr. D.Co. Oct. 17, 2011) ("[T]he Court finds no compelling reason to interfere with and essentially re-open proceedings that are nearly fully adjudicated in the State Court[.]").  Those adjudicated issues are law of the case.  The Versa Parties' apparent attempts to forum shop and relitigate issues that have already been decided is therefore improper.  *See In re Nassau Dev. of Vill. W. Corp.*, 547 B.R. 857, 862 (Bankr. S.D. Fla. 2016) ("The [] Action is a non-core proceeding with no independent federal jurisdiction, state court issues are only involved, non-debtor defendants are present, and the action almost reached final adjudication in the state trial court.  The timing and nature of the removed case strongly suggests forum selection.").  This factor weighs in favor of abstention and remand.

**7.    The Guarantee Action is Unrelated to the Bankruptcy Case And Involves Non-Debtor Parties**

The Guarantee Action is wholly unrelated to the main Bankruptcy Case.  The Debtor has never been a party to the Guarantee Action, which solely involves non-debtor parties.  *See, e.g.*, *In re LaRoche Indus., Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004) (holding that this factor favored abstention even when one party to action was the debtor).  These factors weigh in favor of abstention and remand.

**8.    The Claims Against Defendants Are Non-Core**

The claims asserted in the Guarantee Action are non-core because they arose prepetition and do not implicate any claims or matters under the Bankruptcy Code.  The mere fact that the Guarantee Action involves alter ego allegations does not transform them into core claims. *In re Moshannon Valley Citizens, Inc.*, No. 1:06-bk00095-MDF, 2009 WL 522906, at *4 (Bankr. M.D. Pa. Feb. 25, 2009) ("Alter ego claims are not core proceedings because they target the assets of a non-debtor.  These claims are not created by the Bankruptcy Code, nor do they invoke concepts exclusive to bankruptcy cases."); *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 118 (N.D. Tex. 2006) ("[A]lter-ego claim is a purely state-law cause of action that does not fall within the core of federal bankruptcy power[.]") (internal citation omitted).  Similarly, the Versa Parties' intention to seek indemnification from BridgeStreet does not render the state law claims core.  *See In re Exide Technologies*, 544 F.3d 215–16 (3d Cir. 2008) ("[T]here is no authority that a party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core jurisdiction[.]") (internal citation omitted).

Here, the majority of factors governing permissive abstention heavily favor abstention and remand.  *See In re Residential Capital*, LLC, No. 12-12020, 2015 WL 4747785, at *14 (Bankr. S.D.N.Y. Aug. 4, 2015) (explaining that "[n]ot all of these factors need be applied," but when the

majority favors abstention, the court should abstain).  Given the long history of the parties'
dispute—and the Versa Parties' blatant attempt to forum shop rather than proceed in the State
Court that has intimate knowledge of the facts and parties—this Court should allow the State Court
to bring the Guarantee Action to its conclusion.  This is especially true considering that resolution
of the Guarantee Action will have no conceivable impact on the bankruptcy estate.  Accordingly,
this Court should abstain from hearing the Guarantee Action and remand to the State Court.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant
Plaintiff's motion to remand the Guarantee Action to New York State Supreme Court, Commercial
Division.

Dated: December 23, 2020
        New York, New York


 */s/  Jay R. Indyke*
**COOLEY LLP**
Jay R. Indyke, Esq.
Jeremiah P. Ledwidge, Esq.
55 Hudson Yards
New York, NY 10001
Telephone:    (212) 479-6000
Facsimile:    (212) 479-6275
 jindyke@cooley.com
 jledwidge@cooley.com

 *Counsel to 47 East 34th Street (NY), L.P.*